UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EDGAR GUEVARA and LORENA M. GUEVARA　　　Case No. 15 CV 2895 (GRB)
Individually and on behalf of all others situated,

　　　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS' RULE**
　　　　　　　　　　　　　　Plaintiffs,　　　　　　**56.1 STATEMENT OF**
　　　　　　　　　　　　　　　　　　　　　　　　　**MATERIAL FACTS**
　　　　-against-

SIROB IMPORTS, INC., NICK BOBORIS and
PETER BOBORIS,

　　　　　　　　　　　　　　Defendants.
-----------------------------------------------------------------X

　　　　Defendants, Sirob Imports, Inc., Nick Boboris and Peter Boboris, by their attorneys, the Law Offices of Peter Metis, LLC, and pursuant to Local Rule 56.1(b), respectfully submit the following statement of material facts in support of defendants' cross motion for partial summary judgment:

　　　　1.　　Sirob Imports is in the business of importing and repackaging various food products.  See EBT of Nick Boboris ("N. Boboris EBT") at 17.

　　　　2.　　Nick Boboris is the owner and sole shareholder of Sirob.  See Boboris EBT, at 12.

　　　　3.　　Peter Boboris has worked at Sirob for approximately 18 years and is an assistant manager.  See EBT of Peter Boboris ("P. Boboris EBT") at 17, 20-21.

　　　　4.　　Larry Watson has been in charge of Sirob's payroll since 2008.  See EBT of Larry Watson ("Watson EBT") at 8, 14.

　　　　5.　　At the time of the plaintiffs' employment, Sirob maintained two separate packaging

1

facilities. One at 515 Broadhollow Road in Melville and one at 21 Gear in Lindenhurst. See Declaration of Lorena Guevara, dated December 19, 2016 annexed to plaintiff moving papers ("L. Guevara Decl.") at ¶¶5-6; EBT of Edgar Guevara ("E. Guevara EBT") at 19.

6. Plaintiffs would travel to and from work in a van with other employees (about 12-14 in number). E. Guevara would get dropped off first at around 6:30 then the van would go drop off other employees at the other location. E. Guevara EBT, at 18-21.

**WORK COMMENCED AT 7:00 AM:**

7. During plaintiff's employment, the work shift commenced at 7:00 AM. See Declaration of Salvador Polanco dated April 24, 2017 ("Polanco Decl." at ¶¶3-4); P. Boboris EBT, at 119, 123-24; 132, 163; N. Boboris EBT, at 44; EBT of Larry Watson 28, 32; L. Guevara EBT, at 9, 13, 29.

8. All work was given out by the supervisors. No one worked without a supervisor and the supervisors would only distribute the work at 7:00 AM. See P. Boboris EBT, at 119-120, 132; Watson EBT, at 28, 32; Polanco Decl. at ¶3; L. Guevara EBT, at 13, 14; E. Guevara EBT, at 16-17, 21, 81.

9. Some of the employees would punch in earlier than 7:00 AM, however, they would do other things like drink coffee and talk on the phone. See P. Boboris at 133.

10. Plaintiff L. Guevara testified that she would "punch in" when she first got to work. Then she would go to the "dining room" to leave her bag. See L. Guevara EBT, at 14-15.

11. L. Guevara testified that all the employees started their shift at the same time, "At 7:00, the time to go in." See L. Guevara EBT, at 28-29.

2

12. Other than plaintiff E. Guevara's vague and contradictory statements, no other evidence exists that worked commenced before 7:00 AM. See E. Guevara EBT, at 16, 17, 21, 26, 81 and contrast 65-68.

**PREPARATION FOR WORK**:

13. All workers were required not to wear jewelry in the packaging facility. Whether they brought jewelry to work was their business. See P. Boboris EBT, at 57-58; 61-62.

14. The only preparation **some** workers had to do was: 1) obtain white jackets; 2) put on hair nets and gloves; and 3) if the job required, wash their hands. All the prep items were provided as they entered into the packaging area or inside the packaging area. See P. Boboris EBT, at 56-57, 69-70, 128-130; N. Boboris at 79-80.

15. The total time it took for some workers to prep for work in the packaging area was 2-3 minutes. See Polanco Decl. at ¶ 5.

16. All prep time to put on the white jacket, hair nets and gloves occurred after the start time at 7:00 AM. See P. Boboris EBT, at 128-130; N. Boboris 78-79.

17. Plaintiff L. Guevara would get ready for work by taking off her jacket, put on a work jacket put on the cap and then go to the work area. See L. Guevara EBT, at 15. The whole process took approximately 5 minutes. See L. Guevara EBT, at 16.

18. L. Guevara confirmed that the sink to wash her hands was located in the work area. See L. Guevara EBT, at 16.

19. Plaintiff E. Guevara would prepare for work by putting on a "long shirt" and change shoes. See E. Guevara EBT, at 24.

3

20. At the start of the work day, E. Guevara would: 1) arrive approximately at 6:30 AM; 2) walk back to the locker room; 3) put on his shirt and shoes; and 4) wait until 7:00 AM to go start working. See E. Guevara EBT, at 24-27.

**OVERTIME AND PUNCHING OUT:**

21. Suring the time of plaintiff employment, the punch cards were not meant to track the hours worked by the employees. Instead they were meant to track employment attendance and overtime. See P. Boboris EBT, at 154; N. Boboris EBT, at 54-55; 80-81.

22. Employees were not paid according to the exact time on the punch card, but instead were paid on the 7:00 AM to 5:30 PM day and then over-time was added as it was approved by the supervisors and confirmed by Larry Watson. See Watson EBT, at 21.

23. Plaintiff L. Guevara did not look at her punch cards to determine the hours she worked. See L. Guevara EBT, at 38.

24. E. Guevara added up his time from his punch cards on two occasions but could not recall when. See E. Guevara EBT, at 78-79.

25. Although L. Guevara would "punch out" before obtaining her belongings, she did not know what the other employees were doing. See L. Guevara EBT, at 42. There was no one watching the employees "punch out". See L. Guevara EBT at 43.

26. Overtime was never assigned on a per-worker basis but instead as a group. The group assigned over-time would get paid in half our increments. So if they worked until 5:50 they got paid until 6. If they worked until 6:15 they got paid until 6:30. Larry Watson would always check with the supervisors who worked over-time and for how long. See Watson EBT

4

at 90; Polanco Decl. at ¶10; L. Guevara EBT, at 30, 59; E. Guevara EBT, at 37, 83.

27. At the end of the day, L. Guevara would first "punch out" throw the work jacket, grab her pocketbook and then leave to her house. See L. Guevara EBT, at 32.

28. E. Guevara would first punch out at 5:40 PM then go change his clothes. It took him three to five minutes. The van that would pick him to drive him and the others home would come at 6:00PM. See E. Guevara EBT, at 36-37.

29. E. Guevara always was paid for any overtime worked over ½ hour or one hour. See E. Guevara EBT, at 61.

30. There were times when E. Guevara was paid for a half hour of overtime even though he did not completely finish the half hour. See E. Guevara EBT, at 70 (Lines 14-17), 73.

31. There were times when L. Guevara got paid a half hour overtime but only worked twenty minutes and when she got paid one hour overtime but only worked fifty minutes. See L. Guevara EBT, at 59.

32. L. Guevara did not know what other employees did after she punched out. L. Guevara EBT, at 38.

**DEDUCTION FOR LUNCH HOUR:**

33. At the time of plaintiff's employment, the workers, as a group, requested that 20 minutes of their lunch time be taken in the morning in order to have access to a food truck that was in the area. This request was granted by Nick Boboris. See Polanco Decl. at ¶8; P. Boboris at 138; Watson EBT, at 61.

34. E. Guevara received a pay stub with his checks, but would not look at it. See E.

5

Guevara EBT, at 41-42.

35. Neither plaintiff ever complained that they did not get any pay that they were entitled to receive. See L. Guevara EBT, at 23; E. Guevara EBT, at 39-40, 77.

Dated: New York, New York
April 25, 2017

**LAW OFFICES OF PETER METIS, LLC**

By: s/ Peter Metis
Peter Metis (PM 7214)
Attorneys for Defendants
101 Park Avenue, 27th Floor
New York, New York 10178
(212) 808-7780
pmetis@metislawoffice.com