UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EDGAR GUEVARA AND LORENA M.
GUEVARA, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SITUATED,          **ORDER**
                                                                                                  CV 15-2895 (GRB)
                            Plaintiffs,

        -against-

SIROB IMPORTS, INC., NICK BOBORIS
and PETER BOBORIS,

                            Defendants.
----------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

      In this action, plaintiffs seek recovery under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for alleged improprieties in pay practices. Plaintiffs have moved for collective certification under the FLSA and class certification under Federal Rule of Civil Procedure ("Rule") 23, while defendants oppose these motions largely by seeking partial summary judgment as to claims relating to: (1) pre- and post-shift work ("donning and doffing"); and (2) rounding and uncompensated rest periods. For the reasons discussed herein, defendants' motion for partial summary judgment is granted as to the donning and doffing claims, but otherwise denied, and plaintiffs' motion for collective and class certification is granted in part, consistent with the terms of this decision.

**FACTUAL BACKGROUND**

*Undisputed Facts*

Based upon a review of statements submitted by the parties under Local Rule 56.1, the following facts are undisputed or have been ineffectively disputed, except as otherwise noted:[1]

Defendant Sirob Imports, Inc. ("Sirob") was in the business of importing and repackaging food products. Defs.' 56.1 Statement of Material Facts, ECF Docket Entry 52 ("Defs.' 56.1 Statement"), ¶ 1. At the time of the plaintiffs' employment, Sirob maintained two packaging facilities located in Melville and Lindenhurst. *Id.* at ¶ 5. Plaintiffs traveled to and from work in a van with approximately a dozen other employees. *Id.* at ¶ 6. Plaintiff Edgar Guevara ("E. Guevara") would get dropped off first at around 6:30 a.m., and the van would then transport other employees to the second location. *Id.*

It appears that it is undisputed that assignments were given out at the relevant plant at 7:00 a.m. *Id.* at ¶ 8. Similarly, it seems undisputed that employees sometimes punched in earlier than 7:00 a.m., but did not commence production activities prior to that time. *Id.* at ¶ 9. All employees began their shift at 7:00 a.m., "the time to go in." *Id.* at ¶ 11. Before commencing production, employees were required to store their belongings, remove jewelry, wash their hands and don a white coat, gloves and a hairnet. *Id.* at ¶¶ 13-14. This process took, at most,

---

[1] "Under Local Civil Rule 56.1, a party opposing a motion for summary judgment is required to submit a 'Statement of Material Facts upon which it contends there 'exists a genuine issue to be tried' and . . . 'each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).'" *U.S. Bank Nat'l Ass'n v. Sun Life Assurance Co. of Can.*, No. CV 14-4703 (SJF)(ARL), 2016 WL 8116141, at *1 n.1 (E.D.N.Y. 2016) (quoting *Spindler v. Great N. Ins. Co.*, No. CV 13–5237, 2016 WL 921646, at *4 (E.D.N.Y. Feb. 2, 2016), *adopted by*, 2016 WL 899266 (E.D.N.Y. Mar. 9, 2016)), *adopted by*, 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017). "Upon the failure to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." *Id.* (internal quotations omitted).

approximately five minutes. *Id.* at ¶¶ 15, 17. Whether this occurred before or after 7:00 a.m. remains in dispute. The reverse occurred at the end of the day, at which time workers had to remove their work gear and retrieve their belongings. While the record appears slightly ambiguous on this point, the fact that this occurred after punching out does not seem to be seriously disputed. At the same time, these post-shift activities do not appear to be substantial: plaintiff Lorena Guevara ("L. Guevara") agrees that she "would take off her soiled jacket and throw it in a bin to be cleaned, retrieve her pocketbook from her locker and then leave to her house." *Id.* at ¶ 27. The parties assign no time estimates as to the length of the "doffing" period.

Plaintiffs were paid for a workday that extended from 7:00 a.m. through 5:30 p.m., unless overtime was approved by a supervisor. *Id.* at ¶ 22. Overtime was assigned on a "group" basis and paid in half-hour increments. *Id.* at ¶ 26. Pay was subject to rounding, meaning that workers who punched out before, for example, 5:45 p.m., were paid through 5:30 p.m. *See id.* After 5:45 p.m., workers were paid for the half-hour of overtime through 6:00 p.m. *Id.* On this motion, plaintiffs submit a sampling of punch cards which reveals that their work time was rounded down between 94% and 97% of the time. Pls.' 56.1 Statement of Material Facts, ECF Docket Entry 55 ("Pls.' 56.1 Statement"), ¶ 26; *see also* Decl. of Paola Dominguez, Docket Entry 43 ("Dominguez Decl."), ¶¶ 9, 20. Plaintiffs further advise that this amounted to an average rounding down of approximately nine minutes per day. Dominguez Decl. at ¶¶ 12, 23. No calculation is provided for the average amount of rounding up on those rare occasion when this occurred.

Management afforded employees a 20-minute morning break, for which they were not paid, during which period food trucks were available at the plant. Defs.' 56.1 Statement at ¶ 33. Defendants claim that this resulted from an agreement with a group of employees to shave 20

minutes from the unpaid lunch hour to create a mid-morning break. *Id.* Plaintiffs dispute that such an agreement was entered, advise that they did not enter such an agreement and argue that any such agreement would be irrelevant under labor law. Pls.' 56.1 Statement at ¶ 33.

## DISCUSSION

*Conditional Certification of a Collective Action*

Plaintiff's motion for conditional certification is reviewed pursuant to the procedures and standards articulated in *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 98–100 (E.D.N.Y. 2014), which decision is incorporated by reference herein.[2] Significantly, in contrast to plaintiffs in a class action, for whom the statute of limitations is tolled from the initial filing, the statute continues to run as to claims of FLSA collective opt-in plaintiffs until such time of filing a consent to join the action. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Unlike Rule 23 class actions, the statute of limitations for those who have not filed Consent Forms is not tolled by the commencement of this action."). This principle further justifies the preliminary nature of collective certification.

In this case, the collective certification request follows a substantial period of discovery. That discovery has preceded the filing of the request for conditional certification should not

---

[2] Recognizing the relatively undemanding requisites for FLSA collective certification, one of my colleagues has implemented a presumptive form order and notice for this procedure, which astutely and expressly recognizes that, in many cases:

> instead of expending resources litigating Plaintiff's anticipated motion for collective action conditional certification and notice pursuant to 29 U.S.C. § 216(b), the parties, without prejudice to Defendants' rights to challenge collective action certification at a later date, [should] negotiate[ ] the terms of a proposed notice to be sent to members of the alleged collective ("the Notice") and the process for disseminating the Notice.

*See* Individual Practice Rules of Magistrate Judge Anne Y. Shields, Appendix B, *available at* https://www.nyed.uscourts.gov/pub/rules/AYS-MLR.pdf.

4

materially alter the standard of review for a motion.  The disclosures made in discovery, though, may provide defendants with the ability to challenge some or all of the claims made by plaintiffs, which could effectively provide defendants with means to oppose collective certification as to such claims.  That is, by and large, the approach taken by defendants here.

Plaintiffs also seek class certification under the more demanding requirements of class certification under Rule 23.  As the Second Circuit has observed:

> Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class. Moreover, Rule 23(b)(3), which would govern the proposed class action here, requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment would be superior to individual litigation. The "predominance" requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Therefore, the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal citations and alterations omitted).  Moreover, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Id.*  At the same time, "[d]oubts about whether Rule 23 has been satisfied should be resolved in favor of certification." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323(ALC)(AJP), 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013) (quoting *Hamelin v. Faxton–St. Luke's Healthcare*,

5

274 F.R.D. 385, 392 (N.D.N.Y. 2011)), *adopted by*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013); *cf. Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 104 (E.D.N.Y. 2011) ("The Second Circuit . . . has shown a preference for granting rather than denying class certification." (internal quotations and citations omitted)); *Shabazz v. Morgan Funding Corp*., 269 F.R.D. 245, 249 (S.D.N.Y. 2010) ("As the Second Circuit stated . . . 'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" (quoting *Green v. Wolf Corp*., 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969))).

Plaintiffs have submitted substantial evidence of these elements, and defendants have not vigorously disputed any of these elements. Rather, like their opposition to collective certification, defendants rest mostly upon their substantive challenges to plaintiffs' claims. As such, the Court turns to the motion for partial summary judgment.

*Summary Judgment Analysis*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

   1. *Donning and Doffing Claims*

Claims for unpaid pre-shift and post-shift periods spent washing, dressing and making other necessary preparations for work are commonly referred to as donning and doffing claims. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (noting principal question in class action was "whether time spent donning and doffing the required protective gear is compensable work under the FLSA"). While not clearly identified in the briefs, two questions

are presented here: First, under the FLSA, are these donning and doffing activities compensable or non-compensable preliminary and postliminary activities?  Second, even if compensable, are the donning and doffing activities sufficiently *de minimus* so as to prove inactionable, particularly in the context of a class or collective action?

To be clear, the evidence of unpaid donning is limited to employees washing their hands and outfitting themselves with generic smocks, snoods and gloves prior to commencing their work as food handlers.  Plaintiffs' strongest evidence in this regard—their own statements— suggests that the entire donning process takes no more than five minutes.  The evidence of doffing is even more limited—consisting only of tossing the jacket into a bin for laundering, and retrieving their personal belongings.  No time estimate is proffered for the length of the doffing process, which clearly is even less time consuming than the donning procedure.[3]

In *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), the Second Circuit affirmed the dismissal of donning and doffing claims brought by workers at a nuclear power plant.  As part of this determination, the Circuit made observations of particular applicability to the instant case:

> a helmet, safety glasses, and steel-toed boots may be indispensable to plaintiffs' principal activities without being integral.  The donning and doffing of such generic protective gear is not different in kind from "changing clothes and showering under normal conditions," which, under *Steiner,* are not covered by the FLSA. 350 U.S. at 249, 76 S.Ct. 330. Among the activities classified in the regulations as preliminary and postliminary are "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks." 29 C.F.R. § 790.7(g).  The donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation. *See Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th

---

[3] During his deposition, E. Guevara stated that at the end of his shift it would take three to five minutes to change, but gives no further explanation or description of this activity.  Decl. of Peter Metis, Docket Entry 51, Ex. F at 36-37.

7

> Cir.1994) (holding that donning and doffing safety glasses, a pair of earplugs, a hard hat and safety shoes, "although essential to the job, and required by the employer," are pre- and postliminary activities); *Anderson v. Pilgrim's Pride Corp.,* 147 F.Supp.2d 556, 563 (E.D.Tex.2001) (same), *aff'd,* 44 Fed.Appx. 652 (5th Cir. 2002) (not precedential). *But see Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir.2003) (observing that the "donning, doffing, and cleaning of non-unique gear (e.g., hardhats) [is] 'integral and indispensable' as that term is defined in *Steiner*"), *aff'd on other grounds, IBP,* 546 U.S. at 21, 126 S.Ct. 514. The donning and doffing of a helmet, safety glasses and boots are "relatively effortless," non-compensable, preliminary tasks. *N.Y. City Transit Auth.*, 45 F.3d *at* 649. And even if the donning and doffing of a helmet, safety glasses and steel-toed boots were "integral and indispensable" to plaintiffs' principal activities, we would be required to consider whether the time so spent was *de minimis*. *See id.* at 652–53.

*Id.* at 594. Standing alone, this holding appears dispositive on the question of whether donning the generic clothing in this case is integral to the workday under the FLSA.

At the same time, a subsequent decision by the Second Circuit further refined the holding in *Gorman*. In *Perez v. City of New York*, 832 F.3d 120 (2d Cir. 2016), the Circuit considered the question of whether city park rangers could seek compensation under the FLSA for time spent changing into uniforms and protective equipment, including bullet proof vests, as being indispensable *and* integral to their jobs. While the district court entered summary judgment in favor of defendants, the Court of Appeals reversed, holding, *inter alia*, that:

> The district court misconstrued *Gorman* as establishing that generic protective gear is never integral and indispensable to an employee's principal activities. *Gorman* did not endorse any such categorical rule.

*Id.* at 127. Citing a recent Supreme Court decision, the Court of Appeals noted that "[a]n activity is therefore 'integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.'" *Id.* at 124 (quoting *Integrity Staffing Sols.,*

8

*Inc. v. Busk*, –––U.S. –––, 135 S.Ct. 513, 517 (2014)). In this particular context—that is, the deployment of generic protective gear—the Circuit observed that compensable activities included those that "protect against heightened workplace dangers," or, more specifically, "workplace dangers that transcend ordinary risks" such as apparatus protecting workers from lead poisoning in a battery plant or the employment of metal-mesh gear in a slaughterhouse. *Id.* at 124-25 (citing *Steiner v. Mitchell*, 350 U.S. 247, 249-53, 256 (1956) & *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd sub nom.*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005)).

No evidence of record appears to suggest that the preliminary handwashing and protective clothing at issue serves to protect the workers against *any* workplace dangers, let alone extraordinary risks. Rather, the record demonstrates that this preparation is required for sanitary purposes in connection with the handling and packaging of food products. *See, e.g.*, Decl. of Steven John Moser, Docket Entry 45, at 56-78. To the contrary, the activities here constitute, essentially, "changing clothes [and] washing up," which the Supreme Court has held are excludable "'preliminary' or 'postliminary'' activities." *Busk*, 135 S. Ct. at 518 (quoting 29 C.F.R. § 790.7(g)). And while it appears from the record that wearing these items may have been required by health regulations, that fact, standing alone, is insufficient to qualify the donning as integral. *Gorman*, 488 F.3d at 594.

In *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 (2014)[4], a case cited by plaintiffs, Justice Scalia considered, in a slightly different legal context, the use of the following items by steel workers: "a flame-retardant jacket, pair of pants, and hood; a hardhat; a snood; wristlets;

---

[4] In this motion, plaintiffs' counsel contends that the decision in *Sandifer* calls into question the viability of the *de minimis* exception. To the contrary, in *Sandifer*, Justice Scalia expressly left undisturbed the district court's determination that "the time expended by each employee donning and doffing" safety glasses and earplugs "is minimal." *Sandifer*, 134 S. Ct. at 881.

9

work gloves; leggings; metatarsal boots; safety glasses; earplugs; and a respirator." According to Justice Scalia, all but the last three items, to wit: safety glasses, earplugs and a respirator, "clearly fit within the interpretation of 'clothes'" within the meaning of 29 U.S.C. § 203(o). *Id.* This would further support the notion that the items at issue here—a jacket, gloves and a hairnet—similarly constitute clothes, the changing of which have been deemed preliminary under the FLSA. Thus, the Court finds that the undisputed evidence of record fails to establish that the donning and doffing at issue constitutes compensable activity under the FLSA, but rather qualifies as preliminary and postliminary activities—similar to showering and changing clothes—that fall outside the FLSA.

Even assuming, *arguendo*, that the donning and doffing did qualify as integral activities, the claims also fail because the evidence reveals that the time spent was unquestionably *de minimus*. The Second Circuit has held that:

> factors to be considered in determining whether time should be excluded from compensation as *de minimis* were: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis.

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 719 (2d Cir. 2001) (internal quotations and citations omitted). Here, there are at least some practical difficulties in recording the time devoted to preliminary procedures, as the evidence suggests that plaintiffs would generally arrive well before the 7:00 a.m. start, but due to transportation issues rather than for the purpose of preparing for work. *Compare id.* at 719 (noting that "early arrival was necessary for the office to be ready to receive patients by 8:00 a.m. every day"). Second, the size of the claim, even in the aggregate, remains small—again, the most favorable estimate by plaintiff was five

minutes per day including two minutes of handwashing[5]—and no estimate has been provided for the postliminary procedure, which appears to have been extremely cursory. Thus, the only factor that weighs clearly in plaintiffs' favor is the third as this activity was performed regularly. Thus, even if integral, the activity appears to have been *de minimus*.

Therefore, defendants' motion for summary judgment is granted as to the donning and doffing claims.

### 2. Rounding Claims

Defendants' second argument relates to the rounding claims.[6] Citing *Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 (W.D.N.Y. 2014), *inter alia*, defendants point to the permissibility of rounding policies. The *Gordon* case relies upon the federal regulatory scheme, which provides as follows:

> 'Rounding' practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

*Id.* (quoting 29 C.F.R. § 785.48(b)). *Gordon* notes that "rounding policies that 'on average, favor neither overpayment nor underpayment' of wages are permissible, while those that

---

[5] In fact, this estimate by plaintiff seems somewhat generous, as noted authorities recommend that a thorough hand washing should last "at least twenty seconds." *Hand-washing: Do's and don'ts*, MAYO CLINIC, *http://www.mayoclinic.org/healthy-lifestyle/adult-health/in-depth/hand-washing/art-20046253* (last visited Nov. 3, 2017).

[6] It is unclear as to whether defendants are moving for summary judgment as to rounding or whether they simply oppose class certification. However, the procedural vehicle does not change the analysis.

11

'systematically undercompensate employees' are unlawful." *Id.* (quoting *Mendez v. H.J. Heinz Co.*, No. 12–CV–5652, 2012 U.S. Dist. LEXIS 170785, at *6 (C.D. Cal. Nov. 13, 2012)). While there remain factual disputes on these issues, it is clear that plaintiffs have provided evidence suggesting that the rounding policies employed by defendants appear to have overwhelmingly favored undercompensation. This evidence includes not only the statistical evidence prepared by counsel based on the punch cards,[7] but by the description of the nature of the work provided by plaintiffs. Taken together, this evidence supports an inference that the end of the day depended on the completion of an order as well as securing remaining food products against spoilage. Thus, plaintiffs have proffered sufficient evidence to suggest that there is a factual dispute as to whether the rounding policy systematically underpaid employees.

    3. *Unpaid Break*

In arguing that the plaintiffs fail to state a claim with respect to the 20-minute morning break, defendants relate, in great detail, the purported derivation of this break from the unpaid lunch hour. This background, which may make sense as a business matter, has little bearing on the issues in this case.

Of greater relevance is a very clear regulation that provides:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked.

29 C.F.R. § 785.18. "Although not controlling on courts, such regulations do 'constitute a body of experience and informed judgement to which courts and litigants may properly resort for

---

[7] Defendants' argument that the punch cards were not intended to record time for the purposes of overtime compensation seems both incongruous and inapposite. "And I would sooner trust the smallest slip of paper for truth, than the strongest and most retentive memory ever bestowed on mortal man." *Miller v. Cotten*, 5 Ga. 341, 349, 1848 WL 1562, at *6 (Ga. 1848).

guidance,' and should be viewed as persuasive authority." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 65 (2d Cir. 1997) (quoting *Skidmore*, 323 U.S. 134, 140 (1944)) (citing *Reich v. State of New York*, 3 F.3d 581, 588 (2d Cir. 1993)).[8] Thus, the twenty minute break period appears to be compensable time, and defendants' arguments in favor of summary judgment and opposing class and collective certification prove unpersuasive. Thus, defendants' motion for summary judgment is denied as to the morning break claims.

*Conditional Collective and Class Certification*

Having resolved defendants' summary judgment motion, the Court next considers the remaining two objections raised by defendants as to conditional collective certification under the FLSA and class certification under Rule 23. First, as to spread of hours pay, defendants contend that the fact that some members of the potential class earned in excess of minimum wage excludes such members from such requirements. Even assuming this assertion is correct,[9] the fact that certain class members may not qualify for spread of hours pay does not defeat the application for class certification. As Judge Spatt held:

> even if some class members who received more than the minimum wage are not entitled to spread of hours wages, that fact is not enough to defeat commonality. That is because there is a common policy going to the Defendants' liability—namely the Defendants' admissions that it did not pay spread of hours wages prior to this lawsuit—and therefore, the question of whether some class members are entitled to spread of hours wages primarily goes to the issue of damages. The Second Circuit in *Roach* recently re-affirmed

---

[8] Implicitly, defendants may be suggesting that the twenty minute break constitutes a "bona fide meal period" under the regulations (though the regulation suggests that such period must "ordinarily" be at least 30 minutes in duration). *See* 29 C.F.R. § 785.19. Of course, defendants would not be entitled to summary judgment on this issue, but should discovery bear out the appropriate elements, they are not barred from asserting this affirmative defense at the appropriate juncture.

[9] It may not be. *See Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 55 (E.D.N.Y. 2016) ("[T]he question of whether non-minimum wage workers are entitled to a spread of hours premium is an open question in this Circuit.")

13

>its prior holding that the possibility that a court may be required to make individual determinations as to each class member's damages does not, by itself, defeat commonality or render class certification in appropriate. *See Roach*, 778 F.3d at 405 ("Prior to the Supreme Court's decision in Comcast, it was 'well-established' in this Circuit that "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification" under Rule 23(b)(3).... We do not read Comcast as overruling these decisions."). Accordingly, the fact that the proposed class consists of both minimum wage and non-minimum wage employees does not defeat commonality, as the Defendants contend. *See Morris v. Alle Processing Corp.,* No. 08CV–4874 (JMA), 2013 WL 1880919, at *11 (E.D.N.Y. May 6, 2013) ("[T]he presence of both minimum wage and above-minimum wage employees in the proposed class is insufficient to defeat commonality and typicality."); *Flores,* 284 F.R.D. at 126 ("Specifically, Defendants argue that the proposed class encompasses many employees who earn over the minimum wage, and employees who earn over minimum wage are not entitled to spread of hours wages.... As a matter of law, this is not wholly correct. But more important to our purposes on this motion, this is not the type of 'unique defense' that bars collective certification of a class action, especially when there is evidence of a common policy.").

*Mendez*, 314 F.R.D. at 55. Thus, the claim that the proposed class lacks commonality or is overbroad proves unpersuasive.

Second, regarding alleged wage notice violations under N.Y. LAB. LAW § 195.1, defendants seek summary judgment because pay stubs provided effectively offered the same information required in the wage notice. Courts have held that this contention—rather than defeating a motion for class certification—helps establish commonality. *See, e.g.*, *Spencer*, 2013 WL 1040052, at *17 (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 127 (S.D.N.Y. 2012)) ("As to NPT's argument that NPT may have complied with the notice requirement by furnishing the information in a different form, that too raises a common question—namely, whether any such

14

form complied with the NYLL—the resolution of which likewise would be common to all members of the notice subclass."). The same applies here.[10]

## CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment is granted in part as to the donning and doffing claims. Plaintiffs' motion for conditional certification of a collective action and preliminary class certification are otherwise granted. The parties are to meet and confer as to the appropriate form of notice in light of the foregoing opinion, and submit a joint revised notice and accompanying filings within 14 days of the date of this opinion.

SO ORDERED.

Dated: Central Islip, New York
       November 3, 2017

                                                /s/ Gary R. Brown_____
                                                Gary R. Brown
                                                United States Magistrate Judge

---

[10] Defendants' remaining argument suggests an entitlement to summary judgment because at least one representative plaintiff testified that he would not have looked at such information if even provided. In formulating this argument, defendants concede that they were "not in technical compliance with the law." Defs.' Memorandum of Law, Docket Entry 50, at 10. Given this concession, the argument does not appear to warrant entry of summary judgment—technical or otherwise.