UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EDGAR GUEVARA and LORENA M. GUEVARA,
individually and on behalf of all others similarly situated,

                                       Plaintiffs,

Case No. 15-CV-02895 (GRB)

                *- against -*

SIROB IMPORTS, INC., NICK BOBORIS and PETER
BOBORIS,

                                       Defendants.
------------------------------------------------------------------------x

## DECLARATION OF STEVEN J. MOSER
## IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
## APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

I, Steven J. Moser, declare as follows:

    1.    I am the lawyer primarily responsible for prosecuting Plaintiffs' claims.

    2.    I make this declaration in support of the motion for final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement") a copy of which is annexed to the proposed order granting final approval as Exhibit 1.

    3.    The Settlement Agreement provides that "[a]t least 7 days prior to the Fairness Hearing, Class Counsel shall file with the Court a Motion for Final Approval of the Settlement." (§ 3.6).

## PROCEDURAL HISTORY

    1.    The procedural history of this case prior to filing the motion for preliminary approval was set forth in detail in the Declaration of Steven J. Moser dated February 3, 2020. ("Moser Decl. I", ECF No. 95).

    2.    Class Counsel filed a motion for preliminary of the settlement on February 3,

1

2020 (See ECF Nos. 95-97). Annexed to the Notice of Motion was a proposed order granting preliminary approval. *See* ECF No. 95-1, annexed hereto as Exhibit 1.

3. On February 7, 2020, the Court granted the motion for preliminary approval by docket order, and scheduled a fairness hearing for May 18, 2020. A copy of the docket order is annexed hereto as Exhibit 2.

4. The Rule 23 class preliminary certified consists of:

> All nonexempt and/or hourly employees, other than managers, corporate officers, and directors who performed work for Sirob Imports, Inc. at any time during the period from May 19, 2009 until October 19, 2019.

Settlement Agreement, § 1.2 (Defining Rule 23 Class).

5. Under the terms of the Settlement Agreement, each Rule 23 Class Member that does not opt-out of the settlement will release the Defendants from all wage related claims arising under New York State law. Settlement Agreement § 5.1.

6. In addition, each individual who endorses, cashes, or deposits a settlement check will opt-in to the FLSA settlement and thereby release the Defendants from all claims arising under the FLSA. *See* Settlement Agreement § 5.2 (defining scope of release); § 1.4 (defining opt-in plaintiff); § 5.3 (setting forth release language to be printed on settlement check stubs).

## MAILING OF NOTICE AND RECEPTION BY THE CLASS

7. The reception of the settlement by the class has been overwhelmingly positive.

8. The settlement claims administrator, Settlement Services Inc., mailed notices to the 634 class members on February 27, 2020 (the "Notice Date"). See Declaration of Robert Hyte annexed hereto as Exhibit 3, ¶ 5.

9. A total of one hundred one (101) original Notices were returned as undeliverable without forwarding address information. SSI conducted a locator trace for the individuals with a returned Notice prior to the postmark deadline, and new addresses were obtained for twenty-

eight (28) of them.  SSI re-mailed a Notice to these possible new addresses.  Hyte Decl. ¶ 6.

10. Section 3.3.1 of the settlement agreement permitted putative class members to opt-out of the settlement.   No class member has opted-out of the settlement.   Hyte Decl. ¶ 9.

11. Section 3.4.1 of Settlement Agreement permitted putative class members to object to the settlement, in writing.  No class member has objected to the settlement.  Hyte Decl. ¶ 10.

12. I have spoken with many class members.  None of them expressed any opposition to the settlement.

13. Should the Court require submission of the list of the class members in considering this motion, I request leave to file such list under seal, as it contains confidential information.

## **SETTLEMENT AMOUNT**

14. In the Settlement Agreement, Defendants have agreed to pay a maximum amount of $1,200,000 ("Settlement Amount").  4.1.

15. The "Net Settlement Fund", which is the balance of the Gross Settlement Amount after payment of (1) court-approved fees and costs to the settlement claims administrator (2) court-approved attorneys' fees and costs, and (3) the service award to the class representatives, will be distributed to the class based upon length of service, and whether or not the class member is entitled to a wage notice.   4.7.3.   Id. at 5 (1.15, defining "Net Settlement Fund);1.15

16. Each Class Member that has not timely and properly opted-out of the settlement will receive a proportionate share of the Net Settlement Fund ("NSF") based upon the total number of weeks employed by the Defendants.  4.7.  No class member will receive less than $50. 4.7.2.

## SERVICE AWARD

17. The Settlement Agreement states that "[a]t the Fairness Hearing and in the Final Approval Motion, Class Counsel will apply for a serviced award from the QSF to each Named Plaintiff in the amount of $10,000." (Settlement Agreement ¶ 4.6).

18. The Court should approve a $10,000.00 service award from the QSF to the class representatives Lorena Guevara and Edgar Guevara.

19. The service award represents fair compensation for work performed by the representatives on behalf of the class. Over the five year course of this case the plaintiffs have made numerous trips to my office, furnished documents in their possession, provided crucial information necessary for class certification, furnished declarations in support of class certification and in opposition to Defendants' motion for summary judgment, have testified under oath, and provided exhaustive and detailed information regarding their wages, hours, compensation and employment.

20. The Plaintiffs have been model representatives. They have maintained contact with the office, always been responsive, and have been patient over the five year history of this case.

## CLAIMS ADMINISTRATION COSTS

21. The costs associated with the administration of the class action settlement should be approved and paid from the QSF.

22. Section 2 of the Settlement Agreement describes the claims administrator's duties:

> The Settlement Claims Administrator will be responsible for: (1) preparing, printing and disseminating to Class Members the Notice; (2) performing a skip trace and resending any Notice returned without a forwarding address, or resending to those with a new forwarding address; (3) responding to inquiries from respective parties regarding

requests or communications made by the Parties; (4) monitoring and maintaining a telephone number with telephone answerers until the Effective Date; (5) promptly furnishing to counsel for the Parties copies of any opt-out requests, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (6) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (7) calculating and determining each of the Class Members' proportionate share of the Net Settlement Fund in accordance with the formula specified in Section 4.7 of this Agreement; (8) distributing the Settlement Checks to Class Members, (9) paying Court Approved Service Awards and/or Court-approved Costs and Fees, as necessary and pursuant to the terms of this Agreement; (10) preparing, sending and/or wire-transferring Class Counsel's Court-approved attorneys' fees, expenses, and costs; (11) mailing the Service Award and Settlement Checks in accordance with this Agreement and the Final Approval Order; (12) issuing the IRS Form 1099s, to the extent required, for all amounts paid from the Gross Settlement Amount; (13) responding to inquiries of Class Members regarding procedures for filing objections and Opt-out Statements; (14) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (15) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (16) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (17) maintaining adequate records of its activities, including, the costs and fees it incurs with respect to the QSF, the dates of the mailing of Notices, returned mail and any and all other actual or attempted written or electronic communications with Class Members; (18) keeping accurate time and expense records relating to the administration of the settlement; (19) timely responding to communications from the Parties and their counsel; (20) preparing a declaration regarding its due diligence, costs, and fees incurred in the claims administration process; (21) providing images of the Settlement Checks signed by the Opt-In Plaintiffs to Defendants' Counsel and Class Counsel; (22) providing proof of payment of the Service Awards to Defendants' Counsel and Class Counsel; (23) confirming in writing to counsel for the Parties and the Court its completion of the administration of the settlement; and (24) such other tasks as the Parties mutually agree.

23. The claims administrator has diligently fulfilled its obligations under the Settlement Agreement. The total fees and costs associated with the administration of the settlement are $15,000. This amount is fair and reasonable considering the settlement claims administrator's extensive responsibilities and their diligence in discharging them.

### **ATTORNEYS FEES AND OUT OF POCKET COSTS**

24. The Class Action Settlement Agreement permits class counsel to "petition the Court for an award of attorneys' fees of one-third (1/3) of the Gross Settlement Amount, and for

reimbursement of Class Counsel's actual litigation costs and expenses, to be paid from the QSF." Settlement Agreement § 4.4.

25. Plaintiff's Counsel requests that the court approve attorneys' fees of one-third (1/3) of the settlement fund, or $400,000.00.

26. I graduated from Fordham University School of Law in 1997, and was admitted to the bar of the State of New York the same year. I have 23 years of experience in litigation and 12 years of experience in wage and hour litigation. I am admitted to the Eastern District of New York, the Southern District of New York, the Eastern District of Michigan, and the Second Circuit Court of Appeals.

27. I work almost exclusively in prosecuting wage and hour litigation in federal and state court on behalf of aggrieved workers. I speak Spanish fluently. I am an active member of the National Employment Lawyers association and have litigated minimum wage, overtime, prevailing wage, spread of hours, and RICO claims in the Southern and Eastern Districts of New York.

4. I have been appointed as class counsel in other wage and hour litigation in the Eastern and Southern Districts of New York, and in New York State Supreme Court including *Serrano v. Mamais Contracting Corp. and Trustees of Columbia University in the City of New York, et al.,* 12-cv-06374 (LTS)(S.D.N.Y. October 15, 2013)(ECF No. 64), *Mendez v. U.S. Nonwovens Corp.,* 314 F.R.D. 30, 35 (E.D.N.Y. 2016), *Santamaria v. Nature's Value, Inc. et al,* 15-cv-04535 (GRB)(E.D.N.Y. January 4, 2017)(ECF No. 38), *Sanchez-Herrera v. Quadami, et al.,* Index No. 1507/2016 (Supreme Court, Nassau County 2017), and *De Los Santos v. New Food Corp.*, 14-cv-4541(AYS). I have been described as "an experienced FLSA attorney." *Chavez v. White Post Wholesale Growers, Inc.,* 12-cv-1348 (E.D.N.Y. December 18,

2012)(Seybert, J.).

5. The Moser Law Firm, P.C. has represented the plaintiffs since 2014 without any compensation. As of May 8, 2020, we have invested 767.4 hours in this matter, consisting of 548 partner hours and 219.4 paralegal hours. At prevailing rates in this district, hourly fees are computed as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| Steven J. Moser | 548 | $450 | $246,600 |
| Legal Support | 219.4 | $100 | $21,940 |
|  |  |  | $268,540 |

6. In the event that the Court would like to examine the billing records, I respectfully request leave to file under seal. The records tell the story of how the firm handles a case and reveal information regarding case preparation and strategy.

7. We have also incurred out of pocket expenses totaling $13,786.40. A statement of fees incurred from our billing system is annexed to this declaration as Exhibit 4.

\* \* \*

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: Huntington, New York
May 11, 2020

_____
Steven J. Moser